Rachel E. Kaufman (CSB# 259353)
KAUFMAN P.A.
237 S Dixie Hwy, Floor 4
Coral Gables, FL 33133
Telephone: (305) 469-5881
Email: rachel@kaufmanpa.com

*Counsel for Plaintiff and the putative Classes*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RICHARD LIPP JR., individually and on behalf of all others similarly situated,<br><br>*Plaintiff,*<br><br>*v.*<br><br>PREMIER AGENCY REAL ESTATE INC., a California registered corporation,<br><br>*Defendant.* | CIVIL ACTION FILE NO.<br><br>**'25 CV 1685 GPC MSB**<br><br>**CLASS ACTION COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

## CLASS ACTION COMPLAINT

This case addresses a disturbing trend whereby real estate brokerages train their real estate agents to cold call consumers without consent violating the Telephone Consumer Protection Act ("TCPA") to generate business for the brokerages. Plaintiff Richard Lipp Jr. ("Plaintiff Lipp" or "Lipp") brings this Class Action Complaint and Demand for Jury Trial against Defendant Premier Agency Real Estate Inc. ("Defendant" or "Premier Agency Real Estate") to stop the

Defendant from violating the Telephone Consumer Protection Act ("TCPA") by making pre-recorded telemarketing calls to consumers without consent, in addition to placing unsolicited calls to phone numbers that are registered on the National Do Not Call registry ("DNC"). Plaintiff also seeks injunctive and monetary relief for all people injured by Defendant's conduct. Plaintiff Lipp, for this Complaint, alleges as follows upon personal knowledge as to himself and his own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by his attorneys.

## PARTIES

1.  Plaintiff Lipp is a resident of Corpus Christi, Texas.

2.  Defendant Premier Agency Real Estate is a California registered corporation headquartered in Chula Vista, California.

## JURISDICTION AND VENUE

3.  This Court has federal question subject matter jurisdiction over this action under 28 U.S.C. § 1331, as the action arises under the Telephone Consumer Protection Act, 47 U.S.C. §227 ("TCPA").

4.  This Court has personal jurisdiction over the Defendant and venue is proper in this District under 28 U.S.C. § 1391(b) because Defendant is located in this District and the wrongful conduct giving rise to this case was directed by the Defendant from this District.

# INTRODUCTION

5.      As the Supreme Court has explained, "Americans passionately disagree about many things. But they are largely united in their disdain for robocalls. The Federal Government receives a staggering number of complaints about robocalls 3.7 million complaints in 2019 alone. The States likewise field a constant barrage of complaints. For nearly 30 years, the people's representatives in Congress have been fighting back". *Barr v. Am. Ass'n of Political Consultants*, No. 19-631, 2020 U.S. LEXIS 3544, at *5 (U.S. July 6, 2020).

6.      When Congress enacted the TCPA in 1991, it found that telemarketers called more than 18 million Americans every day. 105 Stat. 2394 at § 2(3).

7.      By 2003, due to more powerful autodialing technology, telemarketers were calling 104 million Americans every day. In re Rules and Regulations Implementing the TCPA of 1991, 18 FCC Rcd. 14014, 2, 8 (2003).

8.      The problems Congress identified when it enacted the TCPA have only grown exponentially in recent years.

9.      According to online robocall tracking service "YouMail," 4.8 billion robocalls were placed in May 2025 alone, at a rate of 155.8 million per day. www.robocallindex.com (last visited June 4, 2025).

10.     The FCC also has received an increasing number of complaints about unwanted calls, with 150,000 complaints in 2016, 185,000 complaints in 2017, and

232,000 complaints in 2018. FCC, Consumer Complaint Data Center, www.fcc.gov/consumer-help-center-data.

11.    "Robocalls and telemarketing calls are currently the number one source of consumer complaints at the FCC." Tom Wheeler, *Cutting off Robocalls* (July 22, 2016), statement of FCC chairman.[1]

12.    "The FTC receives more complains about unwanted calls than all other complaints combined." Staff of the Federal Trade Commission's Bureau of Consumer Protection, *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991,* Notice of Proposed Rulemaking, CG Docket No. 02-278, at 2 (2016).[2]

## COMMON ALLEGATIONS

13.    Premier Agency Real Estate is a real estate brokerage that assists consumers in buying and selling properties throughout California.[3]

14.    Premier Agency Real Estate provides training to its real estate agents that includes weekly masterminds, coaching and one-on-one mentorship from its top producers.

---

[1] https://www.fcc.gov/news-events/blog/2016/07/22/cutting-robocalls
[2] https://www.ftc.gov/system/files/documents/advocacy_documents/comment-staff-ftc-bureau-consumer-protection-federal-communications-commission-rules-regulations/160616robocallscomment.pdf
[3] https://www.linkedin.com/company/premier-agency-re/about/

15.     Premier Agency Real Estate provides required, one-on-one training for the first three to six transactions that its agents generate, as well as training webinars for both new and experienced agents.[4]

16.     Premier Agency Real Estate provides consumer leads, marketing tools and sales scripts to its real estate agents:

## Licensed Real Estate Agent

Premier Agency Real Estate
San Diego, CA

 ⚡ Quick Apply

**World-Class Training & Support** – **Your Success is Our Priority**

- Weekly masterminds, coaching sessions, and one-on-one mentorship from top producers.
- Proven sales scripts and negotiation techniques to increase conversions.
- Access to a collaborative and growth-oriented team to help you scale faster.

**What Our Agents Say:**
"I appreciate the supportive culture of Premier. They are very focused on growing their agent's businesses. Our success is their priority." – Gary Cashman, Real Estate Agent

**The Best Tools & Transaction Support in the Industry**

- State-of-the-art CRM and transaction management software to streamline your business.

---

[4] https://joinpremieragency.com/#1

## Licensed Real Estate Agent

🏢 Premier Agency Real Estate
📍 San Diego, CA

↪    ⚡ Quick Apply

**High-Quality Leads & Business Growth Opportunities**

- Exclusive, high-quality leads—no need to spend thousands on marketing.
- Done-for-you marketing tools to help you stand out in the San Diego market.
- Social media and branding support to help you become the go-to agent in your area.

[5]

17.    Premier Agency Real Estate generates revenue through flexible commission plans that begin at a cost of $49 per month to the real estate agent.[6]

18.    Premier Agency Real Estate agents pay $185 for error and omissions insurance, per transaction, as well as a $149 administration fee per transaction.[7]

19.    The CEO of Premier Agency Real Estate is Guillermo "Memo" Cardona.[8]

20.    Cardona owns other companies including Forward Mortgage, the in-house lender of Premier Agency Real Estate, which provides an additional source of revenue for both the Defendant, Forward Mortgage, and Cardona himself:

---

[5] https://www.simplyhired.com/search?q=remote+real+estate+transaction+coordinator

[6] https://joinpremieragency.com/#1

[7] Id.

[8] https://www.rebuildamericafund.com/about/

CLASS ACTION COMPLAINT
-6-



21.     As a result of the above, Premier Agency Real Estate has a vested interest in the success of all of its agents, as that success generates income for the corporation.

**PREMIER AGENCY REAL ESTATE TRAINS ITS REAL ESTATE AGENTS TO ENGAGE IN COLD CALLING TO GENERATE BUSINESS**

22.     Premier Agency Real Estate trains and directs its real estate agents to generate business by placing cold calls to consumers.

23.     Premier Agency Real Estate provides the "Blueprint For Success" on its real estate recruitment website:

---

[9] https://www.instagram.com/p/DC5JAIFy8UA/?hl=en

1
2
3
4
5
6
7
8



9     24.    The Blueprint for Success document provides insight into the training

10   and direction provided by Premier Agency Real Estate.

11     25.    The document discusses business goals and lead generation which

12   includes placing cold calls to generate business:

13
14
15
16
17
18
19
20

21

[11]

26.     Later in the Blueprint, Premier Agency Real Estate lists the top lead generation systems that includes:

    i.     Farm

    ii.    Expired

    iii.   For Sale by Owner ("FSBO")

    iv.    MMM

---

[11] Page 9 of the Blueprint For Success

**6.** *THIS YEAR'S*
## TOP LEAD GENERATION SYSTEMS

| LEAD SOURCES | Name: | Designed to generate _____ revenue |
|---|---|---|
| Main Lead Sources<br>Past Client/Sphere/Database<br>Farm<br>Internet Leads<br>Open Houses<br>Expired<br>FSBO/MMM | Basic System Outline: | |
| | Team Players<br>Involved: | Estimated Cost of System $ _____ |

27.    Farm is a lead source for which a real estate agent selects a geography area and targets the consumers within that area to generate business.

28.    Expired refers to consumers with expired property listings.

29.    FSBO refers to consumers who are listing a property on their own for sale without the use of a real estate agent.

30.    MMM, refers to Money Making Mondays in which agents practice sales solicitations to FSBOs using scripts and the place solicitation calls to those consumers.

31.    All of the above are lead generation methods are targeting consumers by phone calls without consent – i.e. cold calls.

32.    Premier Agency Real Estate goes further by training its agents to keep track of their conversations by tracking the number of conversations placed vs. conversations needed to generate business:

---

[12] Page 18 of the Blueprint

CLASS ACTION COMPLAINT
-10-

## 5. NEW PROSPECT
# CONVERSATIONS NEEDED

### CONVERSATIONS CALCULATION

| | ITEM | AMOUNT | DIRECTIONS |
|---|---|---|---|
| 1 | THIS YEAR'S TRANSACTIONS GOAL | | INPUT total transactions you want |
| 2 | TOTAL NEW PROSPECT CONVERSATIONS NEEDED (ANNUALLY) | | MULTIPLY line 1 by 40 (conversation to sale ratio) |
| 3 | TOTAL NEW PROSPECT CONVERSATIONS NEEDED (MONTHLY) | | DIVIDE line 2 by 11 (months) |
| 4 | TOTAL DAILY NEW PROSPECT CONVERSATIONS NEEDED | | DIVIDE line 3 by 20 (monthly working days) *Minimum 5/5/4's |

[13]

33.    Premier Agency Real Estate also uses cold calling to spread awareness of its brokerage and recruit real estate agents:

---

[13] Page 17 of the Blueprint

**XL Technologies, LLC** is in **San Diego, California**.
October 22, 2024 · 🌐

We just wrapped up a successful recruiting campaign for **Premier Agency Real Estate in San Diego**, led by Memo Cardona! 🚀

Using our proven agent acquisition framework, we helped Premier Agency grow beyond the limitations of cold calling and referrals. The goal? Reach every real estate agent in the market with an omnichannel strategy that leaves no stone unturned. Here's how we did it:

🛠️ **Key Campaign Elements**:

✨ Launched an aggressive email campaign to target agents in the market.

✨ Created engaging ad campaigns to introduce Premier Agency to a broader audience.

✨ Produced all campaign assets, including graphic design and compelling copy.

✨ Integrated the recruiting website with the AgentHire recruiting CRM system for seamless lead tracking.

✨ Leveraged XL Technologies' proprietary database + Facebook interest categories for pinpoint targeting.

✨ Ran display ads targeting a cold audience with varied, impactful messaging.

✨ Created a series of emails to engage a cold audience. [14]

34. Premier Agency Real Estate provides a customer relationship management ("CRM") platform to its real estate agents that allows for its agents to place pre-recorded calls to consumer phone numbers, as per Plaintiff's experience, and based on the following:

---

[14] https://www.facebook.com/story.php?story_fbid=1147047906867502&id=100046869109891

CLASS ACTION COMPLAINT
-12-

**Premier Agency Real Estate**                                        ···  🔖  ⚡ Easy Apply

## Licensed Real Estate Agent

San Diego, CA  ·  $40K - $200K (Employer est.)

**What Our Agents Say:**
"I appreciate the supportive culture of Premier. They are very focused on growing their agent's businesses. Our success is their priority." – Gary Cashman, Real Estate Agent

**The Best Tools & Transaction Support in the Industry**
- State-of-the-art CRM and transaction management software to streamline your business.
- Dedicated transaction coordinators to handle paperwork, so you can focus on selling.
- Marketing and admin support on demand—less time on busywork, more time closing deals.

**The Power of a Recognized Brand in San Diego**
- A well-established brokerage with a strong reputation in the San Diego market.
- Local expertise and deep connections that give our agents an edge.
- A culture built on collaboration, integrity, and agent success.

**Who We're Looking For**
- Licensed Real Estate Agents in **San Diego, CA**
- Motivated professionals looking to **increase their production and income**
- Agents who thrive in a **supportive, high-performance culture**
- Those who want to leverage **cutting-edge technology and lead generation**

[15]

35.     Premier Agency Real Estate agents have referred to pre-recorded calls in their consent language on related company websites including:

> By providing San Diego REimagined your contact information, you acknowledge and agree to our Privacy Policy and consent to receiving marketing communications, including through automated calls, texts, and emails, some of which may use artificial or prerecorded voices. This consent isn't necessary for purchasing any products or services and you may opt out at any time. To opt out from texts, you can reply, 'stop' at any time. To opt out from emails, you can click on the unsubscribe link in the emails. Message and data rates may apply.

[16]

---

[15] https://www.glassdoor.com/job-listing/licensed-real-estate-agent-premier-agency-real-estate-JV_IC1147311_KO0,26_KE27,53.htm?jl=1009699183361

[16] https://sandiegoreimagined.com/contact



36.    Premier Agency Real Estate profits from the cold calling its agents engage in to generate business.

37.    It was this unlawful telemarketing conduct that led to the unsolicited pre-recorded calls that Plaintiff Lipp received, despite having his cell phone number registered on the DNC.

38.    In response to these calls, Plaintiff Lipp brings forward this case seeking injunctive relief requiring the Defendant to cease from violating the TCPA, as well as an award of statutory damages to the members of the Classes and costs.

---

[17] https://aor-sandiegorealtor.com/

**PLAINTIFF LIPP'S ALLEGATIONS**

39.    Plaintiff Lipp is the sole owner and user of his cell phone number ending in 0339.

40.    Plaintiff Lipp registered his cell phone number on the DNC on November 14, 2021.

41.    Plaintiff Lipp uses his cell phone number for personal and household use only as one would use a residential landline.

42.    Plaintiff Lipp does not and has never used his cell phone number for business purposes or employment.

43.    It has never been held out by Plaintiff Lipp to the public or advertised for business purposes.

44.    It has only ever been used as a personal use phone number.

45.    Plaintiff Lipp uses his cell phone number to communicate with family and friends.

46.    Plaintiff Lipp uses his cell phone to deal with household issues like scheduling services.

47.    Plaintiff Lipp's cell phone has a 619 California area code, but he resides in Corpus Christi, Texas.

48.    Plaintiff Lipp did not own a property in California.

49.     The calls that Plaintiff Lipp received from Premier Agency Real Estate were received more than 31 days after the Plaintiff registered his cell phone number on the DNC.

50.     On April 26, 2025, at 12:01 PM, Plaintiff Lipp received an unsolicited call to his cell phone from 541-395-1241.

51.     This call was not answered, but a pre-recorded voicemail was left:



52.     On May 5, 2025, at 5:46 PM, Plaintiff Lipp received a 2nd unsolicited call to his cell phone from 458-254-2125.

53.     This call was not answered, but a pre-recorded voicemail was left:

54.     Plaintiff Lipp believes that voicemails are pre-recorded because they are identical to each other.

55.     The voicemails are both 31 seconds in length, contain the exact same generic wording, the same pauses and diction, the same period of silence before the voicemail ends, and because the voicemails are identical despite a 9-day separation between the 2 voicemails.

56.     The voicemails ask Plaintiff Lipp to call 877-653-7127.

57.     877-653-7127 is the phone number for Alex Obeso, a Premier Agency Real Estate agent:



58.     Obeso is licensed to work as a real estate agent for Premier Real Estate

Agency as of June 5, 2025, and has been licensed since December 5, 2024:

| | |
|---|---|
| **License Type:** | SALESPERSON |
| **Name:** | Obeso, Alejandro Jr |
| **Mailing Address:** | 1072 STRAWBERRY VALLEY DR<br>CHULA VISTA, CA 91913 |
| **License ID:** | 01398536 |
| **Expiration Date:** | 03/01/28 |
| **License Status:** | LICENSED |
| **Salesperson License Issued:** | 01/09/04 |
| **Former Name(s):** | NO FORMER NAMES |
| **Responsible Broker:** | License ID: 02240990<br>Premier Agency Real Estate Inc.<br>900 LANE AVE STE 100<br>CHULA VISTA, CA 91914 |

[19]

59.    The voicemails that Plaintiff Lipp received from Obeso on behalf of Premier Agency Real Estate are solicitations as they ask Plaintiff if he is interested in selling his property.

60.    Premier Agency Real Estate provides cash offer services as part of its business offerings:

---

[19] https://www2.dre.ca.gov/publicasp/pplinfo.asp?License_id=01398536

CLASS ACTION COMPLAINT
-19-

61.    When a consumer accepts a cash offer on a property, they are incurring a cost as a result of the depreciated property value they receive.

62.    Flipperforce, a real estate platform, explains that there is a 70% rule formula that property buyers use to evaluate how much a property should be purchased for, which generally equates to the value of the property minus 15% in repair costs and 15% in profit:

---

[20] https://www.premieragencyre.com/copy-of-home

**Why Do House Flippers Use 70%?**

In order to successfully flip houses you need to buy properties at a big enough discount to make a profit and cover all of the other 'Fixed Costs' (buying, holding, selling & financing costs).

When you multiply the After Repair Value by 70% you are discounting the property by 30% to cover your Profit and Fixed Costs.

Generally speaking, the 30% reduction is broken down as roughly 15% for your Profit and 15% for the Fixed Costs.

21

63.    Beyond supplying leads and marketing materials, Defendant provides its agents with "cash offer" capabilities as a core component of their business development approach. Agents receive training and encouragement to deploy these cash offers as an initial outreach method, claiming they represent an immediate purchaser. On information and belief, when consumers reject these cash offers which are typically below market value agents transition to promoting traditional listing services which they would charge the consumer a listing fee through Defendant's brokerage operations. This approach enables agents to establish initial contact under the pretense of a direct purchase transaction, when their actual business goal is securing property listings. Consequently, these cash offers often serve as a preliminary step to solicit real estate services.

64.    Plaintiff Lipp has never done business with Premier Agency Real Estate.

---

[21] https://www.flipperforce.com/how-to-flip-houses/chapter-4-how-to-analyze-house-flip-deals/70-percent-rule-formula?utm_source=chatgpt.com

65.     Plaintiff Lipp has never provided his cell phone number to Premier Agency Real Estate.

66.     Plaintiff Lipp does not own a property in California, and Premier Agency Real Estate operates primarily in San Diego, California.[22]

67.     Plaintiff Lipp never provided consent to Premier Agency Real Estate or any of its real estate agents to receive solicitation calls to his cell phone, including calls that were placed using a pre-recorded message.

68.     The unauthorized solicitation telephone calls that Plaintiff received from or on behalf of Defendant have harmed Plaintiff Lipp in the form of annoyance, nuisance, and invasion of privacy, occupied his phone line, and disturbed the use and enjoyment of his phone, in addition to the mental distress they caused.

69.     Seeking redress for these injuries, Plaintiff Lipp, on behalf of himself and Classes of similarly situated individuals, brings suit under the TCPA.

## CLASS ALLEGATIONS

70.     Plaintiff Lipp brings this action pursuant to Federal Rules of Civil Procedure 23(b)(2) and 23(b)(3) and seeks certification of the following Classes:

**Pre-recorded No Consent Class:** All persons in the United States who from four years prior to the filing of this action through class certification (1) Defendant Premier Agency Real Estate called on their cellular telephone number (2) using an artificial or pre-recorded voice.

---

[22] https://www.linkedin.com/company/premier-agency-re/

**Do Not Call Registry Class:** All persons in the United States who from four years prior to the filing of this action through class certification (1) Defendant Premier Agency Real Estate called more than one time, (2) within any 12-month period, (3) where the person's residential telephone number had been listed on the National Do Not Call Registry for at least thirty days, (4) for substantially the same reason Defendant called Plaintiff.

71.    The following individuals are excluded from the Classes: (1) any Judge or Magistrate presiding over this action and members of their families; (2) Defendant, its subsidiaries, parents, successors, predecessors, and any entity in which either Defendant or their parents have a controlling interest and their current or former employees, officers and directors; (3) Plaintiff's attorneys; (4) persons who properly execute and file a timely request for exclusion from the Classes; (5) the legal representatives, successors or assigns of any such excluded persons; and (6) persons whose claims against the Defendant have been fully and finally adjudicated and/or released. Plaintiff Lipp anticipates the need to amend the Class definition following appropriate discovery.

72.    **Numerosity and Typicality**: On information and belief, there are hundreds, if not thousands of members of the Classes such that joinder of all members is impracticable, and Plaintiff is a member of the Classes.

73.    **Commonality and Predominance**: There are many questions of law and fact common to the claims of the Plaintiff and the Classes, and those questions predominate over any questions that may affect individual members of the Classes.

Common questions for the Classes include, but are not necessarily limited to the following:

     i.      whether Defendant Premier Agency Real Estate or its agents placed pre-recorded voice message calls to Plaintiff Lipp and members of the Pre-recorded No Consent Class without first obtaining consent to make the calls;

     ii.      whether Defendant Premier Agency Real Estate placed multiple calls within a 12-month period to Plaintiff and other consumers whose telephone numbers were registered with the DNC for at least 30 days of the time of each call;

     iii.      whether the calls constitute a violation of the TCPA;

     iv.      whether Class members are entitled to an injunction against Defendant preventing it from making unsolicited prerecorded calls; and

     v.      whether members of the Classes are entitled to treble damages based on the willfulness of Defendant's conduct.

74.   **Adequate Representation**: Plaintiff Lipp will fairly and adequately represent and protect the interests of the Classes and has retained counsel competent and experienced in class actions. Plaintiff Lipp has no interests antagonistic to those of the Classes, and the Defendant has no defenses unique to Plaintiff. Plaintiff Lipp and his counsel are committed to vigorously prosecuting this action on behalf of the members of the Classes and have the financial resources to do so. Neither Plaintiff Lipp nor his counsel have any interest adverse to the Classes.

75. **Appropriateness**: This class action is also appropriate for certification because the Defendant has acted or refused to act on grounds generally applicable to the Classes and as a whole, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the members of the Classes and making final class-wide injunctive relief appropriate. Defendant's business practices apply to and affect the members of the Classes uniformly, and Plaintiff's challenge of those practices hinges on Defendant's conduct with respect to the Classes as wholes, not on facts or law applicable only to Plaintiff Lipp. Additionally, the damages suffered by individual members of the Classes will likely be small relative to the burden and expense of individual prosecution of the complex litigation necessitated by Defendant's actions. Thus, it would be virtually impossible for the members of the Classes to obtain effective relief from Defendant's misconduct on an individual basis. A class action provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court.

## FIRST CLAIM FOR RELIEF
### Telephone Consumer Protection Act
### (Violation of 47 U.S.C. § 227)
### (On Behalf of Plaintiff Lipp and the Pre-recorded No Consent Class)

76. Plaintiff repeats and realleges the prior paragraphs of this Complaint and incorporates them by reference herein.

77.    Defendant Premier Agency Real Estate and/or its agents transmitted unwanted telephone calls to Plaintiff Lipp and the other members of the Pre-recorded No Consent Class using a pre-recorded voice message.

78.    These pre-recorded voice calls were made *en masse* without the prior express written consent of the Plaintiff Lipp and the other members of the Pre-recorded No Consent Class.

79.    The Defendant has, therefore, violated 47 U.S.C. § 227(b)(1)(A)(iii). As a result of Defendant's conduct, Plaintiff Lipp and the other members of the Pre-recorded No Consent Class are each entitled to a minimum of $500 in damages, and up to $1,500 in damages, for each violation.

### SECOND CLAIM FOR RELIEF
**Telephone Consumer Protection Act**
**(Violations of 47 U.S.C. § 227)**
**(On Behalf of Plaintiff Lipp and the Do Not Call Registry Class)**

80.    Plaintiff repeats and realleges paragraphs 1-75 of this Complaint and incorporates them by reference herein.

81.    The TCPA's implementing regulation, 47 C.F.R. § 64.1200(c), provides that "[n]o person or entity shall initiate any telephone solicitation" to "[a] residential telephone subscriber who has registered his or his telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the federal government."

---

CLASS ACTION COMPLAINT

82.    Any "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may" may bring a private action based on a violation of said regulations, which were promulgated to protect telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object.  47 U.S.C. § 227(c).

83.    Defendant violated 47 C.F.R. § 64.1200(c) by initiating, or causing to be initiated, telephone solicitations to telephone subscribers such as Plaintiff Lipp and the Do Not Call Registry Class members who registered their respective telephone numbers on the National Do Not Call Registry, a listing of persons who do not wish to receive telephone solicitations that is maintained by the federal government.

84.    Defendant violated 47 U.S.C. § 227(c)(5) because Plaintiff Lipp and the Do Not Call Registry Class received more than one telephone call in a 12-month period made by or on behalf of the Defendant in violation of 47 C.F.R. § 64.1200, as described above.

85.    As a result of Defendant's conduct as alleged herein, Plaintiff Lipp and the Do Not Call Registry Class suffered actual damages and, under section 47 U.S.C. § 227(c), are entitled, inter alia, to receive up to $500 in damages for such violations of 47 C.F.R. § 64.1200.

86.    To the extent Defendant's misconduct is determined to be willful and knowing, the Court should, pursuant to 47 U.S.C. § 227(c)(5), treble the amount of statutory damages recoverable by the members of the Do Not Call Registry Class.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff, individually and on behalf of the Classes, prays for the following relief:

a)    An order certifying this case as a class action on behalf of the Classes as defined above; appointing Plaintiff as the representative of the Classes; and appointing his attorneys as Class Counsel;

b)    An award of money damages and costs;

c)    An order declaring that Defendant's actions, as set out above, violate the TCPA;

d)    An injunction requiring Defendant to cease all unsolicited calling activity, and to otherwise protect the interests of the Class; and

e)    Such further and other relief as the Court deems just and proper.

**JURY DEMAND**

Plaintiff Lipp requests a jury trial.

**RICHARD LIPP JR.**, individually and on behalf of all others similarly situated,

1    DATED this 2nd day of July, 2025.

2                                          By: /s/ *Rachel E. Kaufman*
                                           Rachel E. Kaufman
3                                          KAUFMAN P.A.
                                           237 S Dixie Hwy, Floor 4
4                                          Coral Gables, FL 33133
                                           Telephone: (305) 469-5881
5                                          Email: rachel@kaufmanpa.com

6                                          *Attorney for Plaintiff and the putative*
                                           *Classes*
7

8

9

10

11

12

13

14

15

16

17

18

19

20

21                          CLASS ACTION COMPLAINT
                                      -29-